CHARLES G. HOYT, Appellant, *v.* JOSEPH A. CROSS, Respondent.

Defendant being called upon to pay a gambling debt due from him to plaintiff, proposed that if plaintiff would lend his note to defendant's firm he would get it discounted and pay plaintiff the money, and take care of the note when due. Plaintiff thereupon gave his note as requested and received the proceeds in payment of the debt. Upon a renewal of the note defendant gave to plaintiff his note to secure the latter from liability on the renewal note. That note was transferred to a *bona fide* holder for value, who sued plaintiff thereon and he was compelled to pay. In an action upon defendant's note *held*, that it was not given for a gambling debt within the meaning of the statute (1 R. S. 663, § 16), declaring void obligations so given; that said debt was absolutely paid and discharged under the first arrangement, and thereafter had no existence; that the note in suit was given simply to indemnify plaintiff against liability on his accommodation note, and having been compelled to pay, this furnished a good consideration.

(Argued December 8, 1887; decided January 17, 1888.

APPEAL from judgment of the General Term of the City Court of Brooklyn, entered upon an order made October 26, 1885, which overruled plaintiff's exceptions ordered to be heard at first instance at General Term, and directed judgment upon a verdict.

The nature of the action and the material facts are stated in the opinion.

*Joseph A. Burr* for appellant. The consideration of the note was not wholly or in part a gaming debt. (3 R. S. [Banks' 7th ed.] 1963, § 16.) If it is the fact that the proceeds of the original accommodation note from Hoyt to Goodwin, Cross & Co. were used by Cross to pay the gaming debt to Hoyt, this would not invalidate the transaction. (*Hawkes* v. *Weaver*, 46 Barb. 164; *McKinstry* v. *Davis*, 17 Week. Dig. 490.) The law does not forbid a man to pay his gaming debts. It recognizes the fact that not every one who is foolish enough to gamble is too dishonorable to pay his debts, for it provides that after three months such payment becomes absolute and irrevocable. (3 R. S. [Banks' 7th ed.] 1963, § 14.) A wagering contract upon the result of a game was not void at common law. (*Eggers* v. *Klussmann*, 16 Abb. N. C. 226; *Good* v. *Elliot*, 3 T. R. [D. & E.] 693; *Henry* v. *Cricket*, 3 Camp. 168.) The defense, therefore, being purely statutory, in pleading such a defense, it is incumbent upon the defendant to set up the facts in his answer, bringing it within the prohibition of the statute, and to prove them substantially as alleged. (*West T. & C. Co.* v. *Kilderhouse*, 87 N. Y. 168.)

*E. W. Van Vranken* for respondent.

EARL, J. This action was brought to recover on a promissory note made by the defendant, dated March 10, 1884, whereby he promised to pay the plaintiff on demand the sum of $500. The defendant alleged in his answer that the plaintiff played with him at a game of chance called cribbage, for stakes upon credit, and that at such gaming he won from time to time the sum of $500; that the note sued on was given for the money so staked and lost, and that it was void and contrary to the statute against gambling and betting.

The trial judge, after hearing all the evidence, directed a verdict in favor of the defendant and ordered the plaintiff's exceptions to be heard in the first instance at the General Term. There the exceptions were overruled and judgment ordered for the defendant.

Upon the facts as they appear in this record we think the plaintiff was entitled to recover. Shortly prior to the 7th day of August, 1883, the plaintiff and defendant played at cribbage for stakes and the defendant lost $500. On that day the plaintiff called at the office of the defendant and asked him to pay the debt thus created. The defendant replied that it was not convenient to pay it then, and upon being pressed for the money proposed to the plaintiff that if he would lend his note for three months for $500 to the defendant's firm he would get it discounted and pay him the money and take care of the note when it came due. Accordingly plaintiff made and delivered his note for $500, dated on that day, payable three months from date to the order of Goodwin, Cross & Co., and the defendant procured it to be discounted and used the money to pay the gambling debt. That note fell due on the tenth of November, and on the twenty-seventh day of November the plaintiff made another note for $500, payable to the order of Goodwin, Cross & Co., at the request of the defendant, he stating that he wanted it to enable him to take care of the prior note. That note matured on the 1st of March, 1884, and the defendant again asked the plaintiff for a new note for the same amount and running for the same time. Plaintiff objected to giving another note for the reason that if either he or defendant died, he would have nothing to show but that he owed the firm of Goodwin, Cross & Co. that note, and thereupon asked defendant to give him a note payable on demand to offset the accommodation note which he had loaned defendant's firm, and this the defendant did; and the note thus given is the one in suit. In pursuance of this arrangement the plaintiff made an accommodation note, payable to the same firm, which fell due June 13, 1884. On the twenty-seventh of June defendant procured from plaintiff another accommodation note, but the amount was increased to $600. That note became due October first, and on October twenty-seventh defendant obtained from plaintiff another note for three months, reducing, however, the amount thereof to the original sum, $500. Before the note of October twenty-

seventh matured it was transferred to an innocent holder, for value, who sued the plaintiff upon it and he was compelled to pay it. He then brought this suit.

We do not perceive how this note is affected with any illegality. The gambling debt was absolutely paid on the 7th of August, 1883, and thereafter had no existence whatever. The Revised Statutes (3 R. S. [7th ed.] 1963, § 14) provides that " every person who shall by playing at any game  *  *  * lose at any time or sitting the sum of twenty-five dollars or upward, and shall pay or deliver the same, or any part thereof, may, within three calendar months after such payment or delivery, sue for and recover the money or value of the things so lost and paid or delivered from the winner thereof." Under this statute the defendant could have sued the plaintiff at any time within three months to recover the money thus paid. It is true that the money was procured upon the credit of the plaintiff and the firm of Goodwin, Cross & Co. ; but it was, nevertheless, the money of the defendant at the time it was paid to the plaintiff, and the plaintiff thereafter simply bore the relation of accommodation maker of the note which he delivered to the defendant. The note in suit was given to him, not for the gambling debt, but to indemnify him against his liability upon his accommodation note. The note given by the plaintiff on the 7th of August, 1883, to the defendant, was discounted, not for the plaintiff's accommodation, but for the accommodation of the defendant or his firm. Suppose there had been no law which rendered the gambling debt illegal, and the plaintiff, at any time after he had received the payment made to him on the seventh of August, had sued the defendant for the debt, could not the defendant have successfully maintained that it had been paid? Or suppose that, instead of owing the plaintiff $500 for a gaming debt, he had owed him $500 for borrowed money, and had paid the $500 under precisely the same circumstances which exist in this case, would not the debt have been discharged and could the plaintiff afterward have maintained an action against the defendant for the $500? Clearly not. The consideration

upholding this note is not the gambling debt, but the money paid by the plaintiff upon the accommodation note. After the defendant gave this note, his sole obligation to the plaintiff was to pay the accommodation note, or in default of such payment to pay this note.

It may be said that if the plaintiff can maintain this action he has successfully evaded the statute, which declares that "all things in action * * * given or executed by any person when the whole or any part of the consideration of the same shall be for any money or other valuable thing won by playing at any game whatever * * * shall be utterly void," etc. (3 R. S. [7th ed.] 1963, § 16.) But it is frequently true that statutes enacted for the public welfare may be successfully evaded without any violation of them.

We are, therefore, of opinion that the court below erred in directing a verdict in favor of the defendant, and in not directing a verdict in favor of the plaintiff.

The judgment should be reversed and a new trial granted, costs to abide event.

All concur except DANFORTH, J., not voting, and PECKHAM, J., dissenting.

Judgment reversed.